**WOLF POPPER LLP**
Philip M. Black (SBN 308619)
pblack@wolfpopper.com
Carl L. Stine (*pro hac vice* forthcoming)
cstine@wolfpopper.com
845 Third Avenue
New York, NY 10022
Telephone: 212.759.4600
*Attorneys for Plaintiff and the Proposed Class*
*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RODRIGUEZ, ALEXANDRO MEJIA-SAMUAL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SONY ELECTRONICS INC. and CAPTURE ONE A/S,<br><br>Defendants. | Case No. 25-CV-2305-WQH-SBC<br><br>**AMENDED COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jose Rodriguez and Alexandro Mejia-Samual ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel, bring this Complaint against Defendants Sony Electronics, Inc. ("Sony Electronics") and Capture One A/S ("Capture One"), and based upon personal knowledge with respect to themselves, and on information and belief and the investigation of counsel as to all other matters, in support thereof alleges as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action on behalf of themselves and a class (or classes) of all other similarly situated persons, as defined below.

2. This action concerns Defendants' deceptive and unfair tactic of marketing and bundling a perpetual or lifetime license for post-production editing software called Capture One Express with certain cameras—only to later improperly terminate this license, depriving users of functionality that had been included with their cameras, forcing users to pay for continued access to software they believed was part of their original camera purchase, and/or forcing users to pay for different replacement software.

3. Since at least September 16, 2014, Sony Electronics or its affiliates has advertised a perpetual bundled license of Capture One Express for Sony software with Sony camera sales.[1] However, starting February 12, 2024, Defendants reneged on their promises by terminating the perpetual license.

4. Customers like Plaintiffs use post-production software to edit, organize and manage their photo collections. Defendants knew or should have known that the Capture One Express software was a valuable portion of the camera package sold to consumers. Defendants knew or should have known that terminating and/or charging for this valuable software would harm consumers that opted to pay to continue using

---

[1] https://www.sony.com/en/SonyInfo/News/Press/201409/14-087/

the Capture One software (avoiding substantial switching costs), consumers that paid for substitute software, and even consumers that did not use post-production software, as the resale value of their cameras would necessarily be less without bundled, effective, post-production software.

## PARTIES

5. Plaintiff Jose Rodriguez is a natural person who is a citizen of the United States and who has been domiciled in the State of Texas since December 2022. Prior to December 2022, he was domiciled in the State of California, residing in Moreno Valley, Riverside County. He continues to spend 4-5 months per year living in Moreno Valley, Riverside County, California. He has been a Sony camera owner since February 2, 2021, and used the bundled Capture One Express for Sony software from the time of camera purchase until the software was discontinued.

6. Plaintiff Alexandro Mejia-Samual is a natural person who is a citizen of the United States and who is domiciled in the State of Florida, residing in Gainesville, Alachua County. He has been a Sony camera owner since November 7, 2017, and used the Capture One Express for Sony software from the time of camera purchase until the software was discontinued. He then purchased a Capture One Pro Subscription on July 22, 2024.

7. Defendant Sony Electronics, Inc. is a Delaware corporation headquartered in San Diego, California. Defendant's mailing address is 16535 Via Esprillo, San Diego, CA 92127. Defendant is a subsidiary of Sony Corporation (Japan).

8. Defendant Capture One A/S is a Danish corporation headquartered in Frederiksberg, Copenhagen, Denmark. Formerly known as Phase One, it is owned by Danish private equity firm Axcel, which acquired it in 2019.

9. Sony Electronics markets and sells Sony brand electronic consumer goods, including headphones and cameras, to consumers throughout the United States.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because this action is a class action in which there are 100 or more Class members; the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs; and at least one member of the class(es) is a citizen of a state different from Defendants.

11. This Court has personal jurisdiction over Defendants because Defendant Sony Electronics is headquartered in this District and Defendant Capture One conducts and/or conducted significant business in this District during the time period relevant hereto.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Sony Electronics is headquartered in this District.

13. Upon information and belief, Sony has sold cameras in California and nationwide.

14. Upon information and belief, Capture One has provided software licenses for its camera-bundled processing software to consumers in California and nationwide.

## FACTUAL ALLEGATIONS

15. Sony Corporation (Japan), Sony Electronics, and related affiliates and subsidiaries began production of Sony-branded cameras in 2006.

16. Upon information and belief, at the time Sony Electronics bundled Capture One Express for Sony with its cameras, established competitors like Canon and Nikon held dominant positions in the camera market, and consumers were often tied to these systems with significant investments in lenses and accessories.

17. Upon information and belief, early Sony lenses were also perceived by some users as having shortcomings compared to their long-dominant competitors.

18. Upon information and belief, consumers, particularly those identified as "prosumers" (i.e., amateurs who purchase equipment with quality or features

suitable for professional use), as well as professionals and serious hobbyists, who had made significant investments in camera equipment from established manufacturers like Canon and Nikon, were reluctant to switch camera systems to Sony due to substantial switching costs, which included not only the considerable expense of purchasing new camera bodies and lenses compatible with the Sony system but also the effort and time required to learn an entirely new post-production software workflow.

19. A crucial feature of many modern digital cameras, including Sony cameras, is the ability to capture images in a RAW file format.

20. RAW files contain significantly more image data than compressed formats like JPEG, allowing for greater flexibility and quality in post-production editing, including the potential for lossless editing.

21. Sony's RAW file format is, at least in part, proprietary. Sony uses the ARW (Alpha RAW) format, which is a specific, proprietary version of RAW tailored to Sony cameras and their internal standards. ARW files include custom metadata and features unique to Sony, making them distinct from generic RAW files used by other brands.[2]

22. Upon information and belief, for a significant period relevant to this action, very few, if any, third-party post-production software programs could natively process or fully utilize Sony's proprietary RAW files without requiring a specific plugin or license, which often came at an additional cost.

23. Capture One is a software application developed and licensed by Capture One A/S.

24. Capture One is post-production software designed for installation and use on a computer. It helps organize and edit images captured on digital cameras,

---

[2] https://docs.fileformat.com/image/arw/

and is widely recognized for its professional-grade photo editing and RAW image processing capabilities

25. Capture One A/S has offered its software in various versions or tiers, including a full-featured professional version known as Capture One Pro, and a more limited version known as Capture One Express.

26. Upon information and belief, Sony Electronics, facing significant market dominance from established competitors like Canon and Nikon, implemented a marketing plan that strategically bundled Capture One software with its cameras as a key marketing tactic and value proposition designed to lower the switching costs (both perceived, financial, and/or technical) for potential customers invested in those competing ecosystems or to encourage new camera purchasers to choose Sony cameras over its rivals.

27. Under this arrangement, Sony bundled or offered a specific version of Capture One's software, known as Capture One Express for Sony, with the purchase of eligible Sony cameras.

28. Announced in 2014,[3] the bundling and offering of Capture One Express for Sony with cameras occurred starting in 2015.[4]

29. Capture One Express for Sony was designed to work optimally with Sony cameras and their proprietary RAW image files. This version offered significant photo editing and organizing functionalities, including capabilities specifically beneficial for Sony camera owners, such as native support for Sony RAW formats, corrections for bundled Sony lenses, specific support for scores of Sony camera models and superior, accurate, realistic color processing of Sony camera images.

---

[3] https://www.sony.com/en/SonyInfo/News/Press/201409/14-087/

[4] https://alphauniverse.com/stories/get-started-with-capture-one-pro-and-express-for-sony/ (June 22, 2018).

30. The bundling of Capture One Express for Sony provided consumers with a seamless and effective way to process the high-quality RAW files produced by their Sony cameras, thus enabling them to utilize the full features and capabilities for which they purchased the cameras.

31. Capture One Express for Sony was the result of a joint venture between Sony Electronics and Capture One A/S. On alphauniverse.com (a website owned and operated by Sony Electronics), Sony Electronics stated that "Sony and [Capture] One do something different from the usual in-box bundle. Sony and [Capture] One have a unique partnership that began in 2015. A special free version of Capture One (Capture One 'Express') is available to any Sony camera owner."[5]

32. Beginning in 2014, numerous public representations were made by or on behalf of Sony Electronics, including in a press release and on alphauniverse.com (a website owned and operated by Sony Electronics), and by Sony staff writers, confirming that Sony cameras would include a perpetual license for Capture One Express, including:

a. "Capture One Express (for Sony) will be provided at no extra charge to users who purchase an α interchangeable-lens camera or Cyber-shot RX digital still camera."[6]

b. "Every Sony camera comes with a free version of Capture One Express for Sony."[7]

---

[5] *Id.*

[6] https://www.sony.com/en/SonyInfo/News/Press/201409/14-087/ (September 16, 2014)

[7] https://www.facebook.com/SonyAlphaUniverse/posts/every-sony-camera-comes-with-a-free-version-of-capture-one-express-for-sony-foll/1593915177349026/ (July 6, 2017)

c. "Capture One Express for Sony is completely free for a lifetime."[8]

d. Capture One 'Express' (for Sony) is free for Sony camera owners and you can use it for as long as you like."[9]

33. The Capture One Express Software License, as of February 1, 2022, also described licenses for Capture One Express (for Sony) as "Single user perpetual licenses." Upon information and belief, this language was likely included in prior versions of the license as well.

34. As regards the "Single user perpetual licenses for Capture One Express (for Sony)," the Capture One Express Software Agreement stated, "If the license acquired is for Capture One Express (for Sony) and provided that you are the legitimate owner of eligible Sony hardware as designated by Capture One in its sole discretion you may install and use an unlimited number of Capture One Express (for Sony) for your own internal use." The Agreement provides for termination only of access to "Software (incl. any add-ons) [that] are licensed on a non-perpetual basis." It further provides that Capture One may amend the Agreement, but that "[s]uch amendments shall not have any effect on already purchased perpetual licenses."

35. The inclusion of the perpetual or lifetime license to Capture One Express for Sony software was a material feature of Sony cameras, as it mitigated switching costs and provided a necessary tool to utilize the full capabilities of their Sony cameras, particularly the processing of RAW files.

---

[8] https://alphauniverse.com/stories/capture-one-11-is-here-/ (November 30, 2017)

[9] https://alphauniverse.com/stories/get-started-with-capture-one-pro-and-express-for-sony/ (June 22, 2018)

36. Sony cameras are now second in worldwide market share in the digital camera category[10] and lead the global and U.S. market for mirrorless digital cameras.[11]

37. Upon information and belief, the bundling of Capture One Express for Sony and related representations were successful in helping Sony Electronics gain a dominant position in the U.S. camera market, and helping Capture One develop its user base.

38. In or around December 2023, Capture One announced in an email to users that Capture One Express for Sony would no longer be free or available.

39. Capture One Express for Sony was officially terminated on January 30, 2024, and ceased to function beginning February 12, 2024.

40. Capture One stated that Capture One Express users would no longer have access to the Capture One system software they previously used unless they paid for a different version of Capture One.[12]

41. Upon termination, users who had previously acquired the Capture One Express for Sony software with their camera purchase found their existing licenses disabled and the software unable to function.[13]

42. Users who had relied on Capture One Express for Sony to organize, edit, and manage their photographic images were no longer able to open, view, or modify their images or catalogs within the software after the cutoff date.

---

[10]https://www.statista.com/statistics/1004962/global-leading-manufacturers-digital-cameras-market-share-sales-volume/

[11] https://www.news.market.us/mirrorless-camera-market-news/

[12] https://support.captureone.com/hc/en-us/articles/15416245558301-Capture-One-Express-Deprecation-FAQ

[13] https://support.captureone.com/hc/en-us/community/posts/15419149985309-Capture-One-Express-is-coming-to-an-end

43. All non-destructive edits, adjustments, and image manipulations performed within Capture One Express for Sony became inaccessible, as these edits are stored in proprietary catalog or sidecar files readable only by Capture One software.

44. Users' organizational work, including catalogs, albums, ratings, and color tags created within Capture One Express for Sony, was rendered inaccessible due to the software's discontinuation.

45. Although users retained access to their original image files (such as RAW files) stored on their hard drives, they lost the ability to access or export any edited or organized versions of those images unless they had previously exported them to standard formats (e.g., JPEG, TIFF) before termination.[14]

46. The termination of Capture One Express for Sony was not accompanied by any means for users to migrate or recover their edits, organizational structures, or catalog data without upgrading to a paid version of Capture One.

47. Users who obtained Capture One Express for Sony as a bundled product with their camera purchases were not provided with a replacement or continued access, despite the software being marketed as an included benefit with eligible hardware.

48. The termination of the software and disabling of license keys applied irrespective of user compliance with the license agreement and without any reported breach or misconduct by the users.

49. This termination prevented Plaintiffs and Class members from using the software they obtained as part of their camera purchase.

50. Defendants' actions in terminating access to the software Plaintiffs and Class Members believed they had purchased or received a perpetual license to use,

---

[14] https://support.captureone.com/hc/en-us/articles/11019291187997-How-to-access-your-Catalog-images-outside-of-Capture-One

constitutes an improper revocation of the perpetual license, which was a benefit that was bundled with and induced the purchase of Sony cameras.

51. Defendants' actions effectively rendered Sony cameras that had been bundled with Capture One Express less valuable by removing the promised software necessary to fully utilize features like RAW file processing and superior color processing without incurring additional costs.

52. To continue processing and organizing their images as they had done as part of the Capture One ecosystem, Plaintiffs and Class Members must purchase a Capture One Pro license.

53. Until mid-2025, a Capture One Pro license subscription cost $24/month or $189/year, and a perpetual license was a one-time cost of $299. As of August 29, 2025, these costs increased to $26/month or $204/year for the subscription, or $329 for the perpetual license.[15] A perpetual license has a one-time payment with lifetime access to one version of the software. As of February 14, 2023, a perpetual license does not include ongoing new feature updates.[16] The subscription version entails ongoing payment but continuous access to the latest features and updates [17]

54. Because of their reliance on Defendants' assurances, related contractual obligations, and the fact of the availability of Capture One Express as a product feature until it was terminated by Defendants, Plaintiffs and Class Members have been forced to either abandon their preferred workflow and potentially their prior editing work, pay for a new license for Capture One Pro, or acquire alternative software to process their Sony camera's RAW files.

---

[15] https://www.captureone.com/en/pricing/capture-one-pro

[16] https://support.captureone.com/hc/en-us/articles/7998068628637-New-License-Model-Changes-to-the-way-licensing-updates-and-upgrades-work

[17] https://www.captureone.com/en/pricing/capture-one-pro

55. The requirement to pay for continued access to software previously represented as perpetually included imposes new unforeseen, unwarranted and unexpected financial burdens and switching costs on Plaintiffs and Class Members. Plaintiffs and Class Members are unable to avoid these switching costs, which have been imposed upon them by Defendants' improper termination of Capture One Express.

56. Class members were upset by Defendants' conduct. On a forum on Capture One's website,[18] customers expressed sentiments including:

a. "I think they have just made lots of hobbyist photographers very unhappy especially those who cannot justify the cost of a yet another subscription software model."

b. "I find it strange that I buy a camera with software and then the software company just stops my license. . . . [I]t [is] absolutely bullocks to disallow the use of software that I bought. Capture One stops my license for commercial reasons, why can't they be honest about that? Legal issues?"

c. "Why [does] C1's 2023 model seem to be 'screw consumers, cheers to greed & money?'"

d. "I think it is okay to discontinue a software, But it is pissing me off that you also kill the activation of software that I got with my Sony Alpha."

e. "The worst part is them needlessly disabling the lisences [sic] that are already active. The only reason for them to do that is FORCE an upgrade out of users."

---

[18] https://support.captureone.com/hc/en-us/community/posts/15419149985309-Capture-One-Express-is-coming-to-an-end

57. Defendants' conduct was intentional. Capture One's private equity owner, Axcel, notes on its website that "Upon investing in Phase One in 2019, Axcel identified the opportunity to split the company into two standalone businesses: Phase One, specialising in high-quality image capture systems and Capture One, focusing on providing image editing software. Capture One continues to grow ***by converting existing customers to subscription*** and acquiring new customers through a software application portfolio that continues to improve and expand." (Emphasis added).[19]

58. Plaintiff Rodriguez bought his camera, a Sony Alpha 7R III (Model Number/Product code: ILCE7RM3B), online from Abt Electronics in February, 2021, with instructions for it to be delivered to his California address in Moreno Valley. Plaintiff Mejia-Samual purchased his camera, a Sony A77II , online from Amazon.com in November 2017 with instructions for it to be delivered to his then residential address in West Palm Beach, Florida. Thereafter, Plaintiff Mejia-Samual purchased a second camera, a Sony a7 III online from Amazon.com in September 2020 with instructions for it to be delivered to his then residential address in Gainesville, Florida. The respective cameras that Plaintiffs Rodriguez and Mejia-Samual purchased included Capture One Express for Sony, which ultimately was the deciding factor causing them each to purchase a Sony camera. Plaintiffs Rodriguez and Mejia-Samual each considered the inclusion of Capture One Express with the camera to be a selling point, because it would help each of them with post production and save money that they would otherwise need to spend on post production software. After purchasing their cameras, both Plaintiffs Rodriguez and Mejia-Samual each regularly used Capture One Express for Sony to edit photographs and manage their photo catalogues. Since their Capture One Express for Sony license was terminated, Plaintiff Rodriguez purchased an Adobe Creative

---

[19] https://axcel.com/company/capture-one/

Cloud Subscription at a cost of $19.99 per month, as well as Luminar AI (now continued as Luminar Neo from Skylum), and Plaintiff Mejia-Samual purchased a Capture One Pro subscription at a cost of $26.00 per month to replace the functionality previously provided by Capture One Express.

59. Capture One terminated access to Capture One Express not just for Sony, but also for Nikon and Fuji cameras, certain models of which also came with "single use perpetual licenses" pursuant to the Capture One Software License Agreement. As with the termination of Capture One Express (for Sony), the termination of the perpetual licenses for Capture One Express (for Nikon) and Capture One Express Fujifilm were unauthorized and unjustified. As regards the "Single user perpetual licenses for Capture One Express (for Nikon)," the Agreement stated: "If the license acquired is for Capture One Express (for Nikon) and provided that you are the legitimate owner of eligible Nikon hardware as designated by Capture One in its sole discretion you may install and use an unlimited number of Capture One Express (for Nikon) for your own internal use." As regards the "Single user perpetual licenses for Capture One Express Fujifilm," the Agreement stated: "If the license acquired is for Capture One Express Fujifilm and provided that you are the legitimate owner of eligible Fujifilm hardware as designated by Capture One in its sole discretion you may install and use an unlimited number of Capture One Express Fujifilm for your own internal use." The Agreement provides for termination only of access to "Software (incl. any add-ons) [that] are licensed on a non-perpetual basis." It further provides that Capture One may amend the Agreement, but that "[s]uch amendments shall not have any effect on already purchased perpetual licenses."

60. A substantial portion of the conduct giving rise to Plaintiffs' claims, including the marketing and sale of the cameras bundled with the software and the defendants' corporate presence, took place in and emanated from California.

**CLASS ACTION ALLEGATIONS**

61. This action is brought by Plaintiffs, individually and on behalf of all others similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

62. Plaintiffs seek to represent the following classes: (1) all persons in the United States who owned a Sony camera that was bundled with Capture One Express (for Sony) on February 12, 2024 (the "Sony Camera Class"); and (2) all persons in the United States who owned any camera that was bundled with Capture One Express on February 12, 2024 (the "Capture One Express Class") (each a "Class" and collectively the "Classes").[20] Plaintiffs also seeks to represent the following subclasses: (1) all persons in California who owned a Sony camera that was bundled with Capture One Express (for Sony) on February 12, 2024 (the "California Sony Camera Subclass"); (2) all persons in Texas who owned a Sony camera that was bundled with Capture One Express (for Sony) on February 12, 2024 (the "Texas Sony Camera Subclass") (collectively the "Sony Camera Subclasses"); (3) all persons in Florida who owned a Sony camera that was bundled with Capture One Express (for Sony) on February 12, 2024 (the "Florida Sony Camera Subclass"); (4) all persons in California who owned any camera that was bundled with Capture One Express on February 12, 2024 (the "California Capture One Express Subclass"); and (5) all persons in Texas who owned any camera that was bundled with Capture One Express on February 12, 2024 (the "Texas Capture One Express Subclass"); (6) all persons in Florida who owned any camera that was bundled with Capture One Express (the "Florida Capture One Express Subclass") (collectively the "Capture One Express Subclasses") (collectively the "Subclasses"). Unless otherwise specified, all references to the Class(es) herein also encompass the Subclasses.

---

[20] https://support.captureone.com/hc/en-us/articles/360002718118-Camera-Models-and-RAW-Files-Supported-by-Capture-One#Sony

63. Upon completion of discovery with respect to the scope of the Classes, Plaintiffs reserve the right to amend the Class definition(s).

64. Excluded from each Class are Defendants and any person, firm, trust, corporation, or other entity related to or affiliated with any of Defendants' partners, subsidiaries, affiliates or joint ventures.

65. The members of each Class are so numerous and dispersed that it would be impracticable to join them individually. The precise number of Class members and their identities are unknown to Plaintiffs at this time but can be determined through discovery.

66. Common questions of law and fact exist as to all members of each Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common one or more of the Classes are:

i. Whether Defendants offered and then terminated access to the Capture One Express postproduction software dishonestly, unfairly, and/or in bad faith;

ii. Whether Capture One breached its contract with users or the implied covenant of good faith and fair dealing therein;

iii. Whether Sony Electronics breached a warranty that its cameras included a perpetual license to use Capture One Express for Sony;

iv. Whether Defendants' conduct violates the California Unfair Competition Law;

v. Whether Defendants' conduct violates the California Consumer Legal Remedies Act;

vi. Whether Defendants' conduct violates the Texas Deceptive Trade Practices Act;

vii. Whether Defendants' conduct violates principles of quasi-contract and/or promissory estoppel;

viii. Whether Defendants' wrongful conduct caused Plaintiffs and the Class members damages;

ix. The measure and amount of damages suffered by Plaintiffs and Class members;

x. Whether Defendants' conduct caused Defendants, or either of them, to be unjustly enriched;

xi. The amount of restitution to which Plaintiffs and Class members are entitled;

xii. Whether Plaintiffs and the Class members are entitled to punitive damages;

xiii. Whether Plaintiffs and the Class members are entitled to equitable relief, injunctive relief, and/or specific performance;

xiv. Whether Plaintiffs and Class members are entitled to a reasonable award of attorney fees, interest, and costs of suit.

67. Plaintiffs' claims are typical of the claims of the members of each Class he seeks to represent because they were all owners and users of cameras bundled with Capture One Express.

68. Plaintiffs will fairly and adequately protect the interests of members of each Class and has retained counsel competent and experienced in class actions and consumer litigation. Plaintiffs have no interests antagonistic to or in conflict with those of any Class.

69. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of each Class is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

70. Defendants have acted on grounds that apply generally to each Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting each Class as a whole.

71. Class certification is also appropriate because there is a readily identifiable class on whose behalf this action can be prosecuted. Class members are readily ascertainable. A notice of pendency or resolution of this class action can be provided to Class members by direct mail, email, publication notice, or other similar means.

## CAUSES OF ACTION

## COUNT I

Violations of the California Unfair Competition Law

Cal. Bus. & Prof. Code §§ 17200, et seq.

*On Behalf of the Sony Camera Class and/or the California Sony Camera Subclass against Sony Electronics*

*On Behalf of the Capture One Express Class and/or the California Capture One Express Subclass against Capture One*

72. Plaintiffs hereby incorporate by reference all factual allegations made in the previous paragraphs.

73. Plaintiffs bring this claim individually and on behalf of the members of the Sony Camera Class and/or the California Sony Camera Subclass against Sony Electronics, and on behalf of the members of the Capture One Express Class and/or the California Capture One Express Subclass against Capture One.

74. Plaintiffs assert this cause of action against Defendants for unlawful, unfair and fraudulent business practices; and unfair, deceptive, untrue and misleading advertising, as defined by California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. (the "UCL").

75. Defendants' conduct violates the UCL, as the acts and practices of Defendants constitute a common and continuing course of conduct by means of

"unlawful," "unfair," and "fraudulent" business acts or practices within the meaning of the UCL.

76. Defendants' conduct is fraudulent, and thus amounts to unfair competition as set forth in the UCL, in that Defendants offered a perpetual license for postproduction software only to unilaterally revoke it, and misrepresented the features and value of cameras bundled therewith. Such misrepresentations and omissions are likely to deceive, and in fact have deceived, thousands of consumers.

77. Defendants' conduct is unlawful and thus amounts to unfair competition as set forth in the UCL, in that it violates, among other things, California Civil Code §§ 1572, 1709 and 1710, as well as California Business & Professions Code § 17500. As described above, Defendants willfully deceived Plaintiffs and Class members by misrepresenting the goods and services they provided and misrepresenting the price to use their good and services with the intent to induce them to alter their positions to their injury. Defendants' representations were untrue and misleading, and Defendant knew, or by exercising reasonable care should have known, such representations were untrue and misleading. Defendant knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class. Therefore, the Defendant acted with conscious disregard for the rights of Plaintiffs and members of the Class.

78. Defendants' conduct is unfair, and thus amounts to unfair competition as set forth in the UCL, because its utility to Defendant, if any, is greatly outweighed by the harm it causes to Plaintiffs and members of the Class; because it violates established public policy as alleged herein; and because it is immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiffs and Class members who end up with a camera and postproduction system that require additional, undisclosed, ongoing fees to achieve expected functionality.

79. As a direct and proximate cause of Defendants' violations of the UCL, Plaintiffs and members of the Class suffered an injury in fact and have suffered

monetary harm. Defendants, on the other hand, have been unjustly enriched. The Court should impose a constructive trust and should require Defendants to make restitution to Plaintiffs and the California Subclass and/or disgorge its ill-gotten profits pursuant to Business & Professions Code § 17203.

80. Defendants' unlawful, unfair, and fraudulent business practices, as described herein, present a continuing threat to Plaintiffs and the Class in that the value of the cameras purchased by Plaintiffs and members of the class has been diminished by Defendants' actions. Plaintiffs further seeks an order enjoining Defendants from engaging in any unlawful or inequitable acts and practices as alleged herein.

81. Plaintiffs and the Class seek equitable relief because they have no other adequate remedy at law.

## COUNT II

Violations of the California Consumer Legal Remedies Act

Cal. Civ. Code §§ 1750, et seq.

*On Behalf of the Sony Camera Class and/or the California Sony Camera Subclass against Sony Electronics*

*On Behalf of the Capture One Express Class and/or the California Capture One Express Subclass against Capture One*

82. Plaintiffs hereby incorporate by reference all factual allegations made in the previous paragraphs.

83. Plaintiffs bring this claim individually and on behalf of the members of the Sony Camera Class and/or the California Sony Camera Subclass against Sony Electronics, and on behalf of the members of the Capture One Express Class and/or the California Capture One Express Subclass against Capture One.

84. The conduct of Defendants alleged above constitutes an unfair method of competition and unfair or deceptive act or practice in violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA").

85. Defendants are each persons as defined by Cal. Civ. Code § 1761(c).

86. Plaintiffs and Class members are consumers as defined by Cal. Civ. Code § 1761(d).

87. Sony Electronics' cameras, described above, constitute a good as defined by Cal. Civ. Code § 1761(a).

88. Defendant(s)' post-production software services, described above, constitute a service as defined by Cal. Civ. Code § 1761(b).

89. Plaintiffs' purchases were transactions under Cal. Civ. Code § 1761(e).

90. The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale . . . of goods or services to any consumer," which, among other instances enumerated in the CLRA, include: "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …." (§ 1770(a)(5)); "Advertising goods or services with intent not to sell them as advertised" (§ 1770(a)(9)); or "Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" (§ 1770(a)(14)); or "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (§ 1770(a)(16)).

91. Defendants violated Cal. Civ. Code § 1770(a)(5) by misrepresenting that affected cameras were bundled with a lifetime license of post-production software when in fact they were not.

92. Defendants violated Cal. Civ. Code § 1770(a)(9) by falsely advertising that affected cameras would have an unlimited or lifetime license of post-production software.

93. Defendant violated Cal. Civ. Code § 1770(a)(14) by representing that its transactions with consumers involve rights to lifetime, included, post-production software, which, in fact, they do not have or involve.

94. Defendant violated Cal. Civ. Code § 1770(a)(16) by representing that that affected cameras had been supplied in accordance with a previous representation about bundled postproduction software, when they had not.

95. The representations and omissions set forth above are of material facts that a reasonable person would have considered important in deciding whether to purchase Defendants' goods and services. Plaintiffs and Class members justifiably acted or relied upon Defendant's misrepresentations and omissions to their detriment.

96. Plaintiffs and the other members of the Class have been, and continue to be, injured as a direct and proximate result of Defendant's violations of the CLRA.

97. Plaintiffs are entitled to pursue a claim against Defendant on behalf of the Class to enjoin Defendant from continuing its unfair or deceptive acts or practices under Cal. Civ. Code § 1780(a) and § 1781, as well as to pursue costs and attorneys' fees under § 1780(e).

98. Pursuant to Cal. Civ. Code § 1782, Plaintiff Rodriguez has served on Defendants a CLRA notice letter. Since Defendants have failed to rectify these issues within the time period specified therein, Plaintiffs hereby assert claims for damages and punitive damages pursuant to Cal. Civ. Code § 3294.

## **COUNT III**

Breach of Warranty

*On Behalf of the Sony Camera Class and/or the Sony Camera Subclasses against Sony Electronics*

*On Behalf of the Capture One Express Class and/or the Capture One Express Subclasses against Capture One*

99. Plaintiffs hereby incorporate by reference all factual allegations made in the previous paragraphs.

100. Plaintiffs bring this claim individually and on behalf of the members of the Sony Camera Class and/or the Sony Camera Subclasses against Sony

Electronics, and on behalf of the members of the Capture One Express Class and/or the Capture One Express Subclasses against Capture One.

101. Defendants expressly warranted that certain cameras included a perpetual license for Capture One Express, which warranty was part of the basis of the bargain between Class members and Defendants.

102. As of February 12, 2024, Defendants terminated the promised perpetual license for Capture One Express.

103. Plaintiffs and the other members of the Classes were injured and suffered damages as a direct and proximate result of Defendant's breach of express warranty.

**COUNT IV**

Promissory Estoppel

*On Behalf of the Sony Camera Class and/or the Sony Camera Subclasses against Sony Electronics*

*On Behalf of the Capture One Express Class and/or the Capture One Express Subclasses against Capture One*

104. Plaintiffs hereby incorporate by reference all factual allegations made in the previous paragraphs.

105. Plaintiffs bring this claim individually and on behalf of the members of the Sony Camera Class and/or the Sony Camera Subclasses against Sony Electronics, and on behalf of the members of the Capture One Express Class and/or the Capture One Express Subclasses against Capture One.

106. Defendants promised that certain cameras included a perpetual license for Capture One Express, which promises were designed to induce customers to purchase certain cameras and/or continue to use those cameras and/or Capture One software.

107. As of February 12, 2024, Defendants reneged on their promise and terminated the perpetual license for Capture One Express.

108. In reliance on Defendants' conduct as alleged herein, Class members purchased and/or used cameras and the Capture One software bundled therewith and refrained from purchasing and/or using other cameras and software.

109. Plaintiffs and Class members were injured by their reliance on Defendants' promise.

**COUNT V**

Breach of Implied Contract or Quasi-Contract

*On Behalf of the Sony Camera Class and/or the Sony Camera Subclasses against Sony Electronics*

*On Behalf of the Capture One Express Class and/or the Capture One Express Subclasses against Capture One*

110. Plaintiffs hereby incorporate by reference all factual allegations made in the previous paragraphs.

111. Plaintiffs bring this claim individually and on behalf of the members of the Sony Camera Class and/or the Sony Camera Subclasses against Sony Electronics, and on behalf of the members of the Capture One Express Class and/or the Capture One Express Subclasses against Capture One.

112. In the absence of an enforceable express contract, a contract is implied by law between the Defendants and the Plaintiffs and Class members, entitling Plaintiffs and Class members an accurate representation of Defendant's goods and bundled services.

113. Defendant breached the terms of the implied contract by selling goods and bundled services (including a perpetual license to postproduction software) to Plaintiffs and Class members and then later unilaterally revoking that perpetual license.

114. As a result of Defendants' wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

115. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, without justification, from the revocation of the promised license and the related additional charges collected for the bundle from members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds, under circumstances making it inequitable to do so, constitutes unjust enrichment.

116. Defendant knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class. Therefore, the Defendant acted with conscious disregard for the rights of Plaintiffs and members of the Class.

117. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

118. The financial benefits derived by Defendants rightfully belong to Plaintiffs and members of the Class. Defendants should be compelled to provide restitution, and to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and the Class, all proceeds received from Plaintiffs and the Class because of any unlawful or inequitable act described herein that unjustly enriched Defendants.

119. A constructive trust should be imposed upon all wrongful or inequitable proceeds received by Defendants traceable to Plaintiffs and members of the Class.

120. Plaintiffs further seek an order enjoining Defendant from engaging in any unlawful or inequitable acts and practices as alleged herein, if any.

121. Plaintiffs and members of the Class have no adequate remedy at law.

## **COUNT VI**

Breach of Contract

*On Behalf of the Capture One Class and/or the Capture One Express Subclasses against Capture One*

122. Plaintiffs hereby incorporate by reference all factual allegations made in the previous paragraphs.

123. Plaintiffs bring this claim individually and on behalf of the members of the Capture One Express Class and/or the Capture One Express Subclasses against Capture One.

124. As alleged above, the Capture One Software License Agreement stated that the various versions of Capture One Express were "Single user perpetual licenses," pursuant to which, "provided that you are the legitimate owner of eligible . . . hardware as designated by Capture One in its sole discretion you may install and use an unlimited number of Capture One Express . . . for your own internal use."

125. Plaintiffs and class members were legitimate owners of eligible hardware, having purchased cameras that were bundled with Capture One Express, and otherwise performed all of their obligations under the agreement.

126. Capture One breached its contract with Class Members by its unauthorized and unjustified termination of the single user perpetual licenses for Capture One Express.

127. Plaintiffs and the other members of the Class were injured and suffered damages as a direct and proximate result of Defendant's breach of contract.

## COUNT VII

Breach of the Implied Covenant of Good Faith and Fair Dealing

*On Behalf of the Capture One Class and/or the Capture One Express Subclasses against Capture One*

128. Plaintiffs hereby incorporate by reference all factual allegations made in the previous paragraphs.

129. Plaintiffs brings this claim individually and on behalf of the members of the Capture One Express Class and/or the Capture One Express Subclasses against Capture One.

130. A covenant of good faith and fair dealing is implied by law in every contract. The covenant obligates the parties to a contract not to do anything which injures the right of the other to receive the benefits of the agreement.

131. Where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing. The exercise of discretionary powers is evaluated under the implied covenant to assure that the promises of the contract are effective and in accordance with the parties' legitimate expectations.

132. As alleged above, the Capture One Software License Agreement stated that the various versions of Capture One Express were "Single user perpetual licenses," pursuant to which, "provided that you are the legitimate owner of eligible . . . hardware as designated by Capture One in its sole discretion you may install and use an unlimited number of Capture One Express . . . for your own internal use."

133. Defendant breached the implied covenant of good faith and fair dealing by exercising its discretion to terminate access to Capture One Express for Sony. In so doing, Defendant deprived Plaintiffs and the Class of the perpetual license it had promised them, contrary to their legitimate expectations.

134. Plaintiffs and their fellow Class members have performed all, or substantially all, of the obligations imposed on them under their contract with Defendant.

135. As described above, Defendant is required to fulfill its obligations under the terms of the Agreement but has failed to do so.

136. Defendant has unfairly interfered with the right of Plaintiff and members of the Class to receive the benefits of their contracts with Defendant.

137. Plaintiffs and members of the Class have suffered substantial damages as a result of Defendant's breaches of the implied covenant of good faith and fair dealing.

## **COUNT VIII**

Violations of the Texas Deceptive Trade Practices Act,

Tex. Bus. & Com. Code §§ 17.41 et seq.

*On Behalf of the Texas Sony Camera Subclass against Sony Electronics*

*On Behalf of the Texas Capture One Express Subclass against Capture One*

138. Plaintiff Rodriguez hereby incorporates by reference all factual allegations made in the previous paragraphs.

139. The Texas Deceptive Trade Practices Act ("Texas DTPA"), Tex. Bus. & Com. Code §§ 17.41 *et seq.*, prohibits false, misleading, or deceptive acts or practices in the conduct of any trade or commerce and any unconscionable action or course of action.

140. The Texas DTPA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." Tex. Bus. & Com. Code § 17.44(a).

141. Plaintiff is a "consumer" under Tex. Bus. & Com. Code § 17.45(4), and Defendants' actions constitute "trade" and "commerce" under Tex. Bus. & Com. Code § 17.45(6).

142. Defendants engaged in methods, acts, and practices constitute false, misleading, or deceptive acts or practices in the conduct of any trade or commerce in violation of the Texas DTPA, including, but not limited to, the following:

a. "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not" (Tex. Bus. & Com. Code § 17.46(b)(5));

b. "advertising goods or services with intent not to sell them as advertised" (*id.* § 17.46(b)(9));

c. "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" (*id.* § 17.46(b)(12)); and

d. "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed" (*id.* § 17.46(b)(24)).

143. Defendants' conduct also violates the Texas DTPA's prohibition on "any unconscionable action or course of action by any person" that causes damages to a consumer (Tex. Bus. & Com. Code § 17.50(a)(3)).

144. Plaintiff, on behalf of himself and the Texas Subclasses, is entitled to seek economic damages, three times economic damages, costs, attorneys' fees, injunctive relief, and any other relief which the Court deems proper.

145. Pursuant to Section 17.505 of the Texas DTPA, 60 days' written notice is rendered impracticable by reason of the necessity of filing this petition in order to prevent the potential expiration of the statute of limitations. Nevertheless, pursuant to Section 17.505 of the Texas DTPA, Plaintiff is providing written notice to Defendants of the allegations in this Complaint and the amount of his damages and expenses incurred. Defendants are hereby placed on notice for the reasons set forth in the DTPA Notice and this Complaint that Plaintiff demands restitution and/or damages, on behalf of himself and persons similarly situated, pursuant to the Texas DTPA.

## **COUNT IX**

Violations of the Florida Deceptive and Unfair Trade Practices Act,
Fla. Stat. § 501.204(1)

*On Behalf of the Florida Sony Camera Subclass against Sony Electronics*
*On Behalf of the Florida Capture One Express Subclass against Capture One*

146. Plaintiff Mejia-Samual hereby incorporates by reference all factual allegations made in the previous paragraphs.

147. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

148. Sony and Capture One Express's conduct, as alleged herein, was likely to deceive a consumer acting reasonably in the same circumstances, and that conduct caused actual damages to Plaintiff Mejia-Samual and members of the Florida Subclasses.

149. Plaintiff Mejia-Samual, on behalf of himself and the Florida Subclasses, seeks damages, injunctive relief, other equitable relief, costs, and attorneys' fees as permitted by Fla. Stat. § 501.211 and § 501.2105.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of each Class, request that the Court award the following relief:

150. Certify this action as a class action, appoint Plaintiffs as the Class representatives, and designate the undersigned as Class counsel;

151. Declare Defendants' conduct unlawful;

152. Enjoin Defendants from the unlawful conduct alleged herein, including by ordering Defendants to immediately provide or restore access to postproduction software equal to the bundled software that was unilaterally terminated;

153. Award Plaintiffs and the Class damages under common law and/or by statute, including treble and/or punitive damages;

154. Award Plaintiffs and the Class restitution and/or disgorgement;

155. Award Plaintiffs attorneys' fees, costs, and pre-judgment and post-judgment interest; and

156. Grant such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial as to all issues so triable in the present action.

DATED: November 19, 2025

Respectfully submitted,

By: */s/ Philip M. Black*
Philip M. Black

WOLF POPPER LLP
Philip M. Black (SBN 308619)
pblack@wolfpopper.com
Carl L. Stine (*pro hac vice* forthcoming)
cstine@wolfpopper.com
845 Third Avenue
New York, NY 10022
Telephone: 212.759.4600

*Counsel for Plaintiff and the Proposed Class*

Eric T. Finkel
Admitted in Texas, Texas Bar No. 24002087
(Pro Hac Vice Application Forthcoming)
eric@custom-consulting.com
1590 1st Ave W
Vancouver, B.C. V6J4X4
Canada
Telephone: 213.465.3543

*Counsel for Plaintiff and the Proposed Class*